UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| GOFORIT ENTERTAINMENT LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 6:06-cv-00816-JA-KRS |
| | ) | |
| DIGIMEDIA.COM L.P., | ) | |
| CYBERFUSION.COM L.P., HAPPYDAYS, INC., | ) | |
| REFLEX PUBLISHING, INC., ERIC GRANT, | ) | |
| SCOTT DAY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS DIGIMEDIA.COM L.P., CYBERFUSION L.P., HAPPYDAYS, INC. AND
SCOTT DAY'S AMENDED MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION**

## I.   INTRODUCTION

As shown herein, the Florida contacts of Defendants Scott Day, Digimedia, Cyberfusion and HappyDays are more than sufficient to subject each of them to personal jurisdiction in this Court.  As evidenced by the accompanying Declaration of Russell Tewskbury and the exhibits attached thereto, Defendant Day deliberately designed the Defendants' on-line businesses to target Florida residents by providing Florida-based search functionality and content in addition to registering several Florida-specific domain names, all of which relate to the activities that give rise to the causes of action in this case.  Defendants' undeniable focus on Florida and its residents leave no doubt that Defendants directly benefit from conducting business in Florida, and as such, should be held to account in this forum.  Defendants are also tied to Florida through their ownership structure: a Florida resident is one of only two directors in the sole general partner of Digimedia and Cyberfusion, and one of Digimedia's two limited partners and Cyberfusion's three limited partners is likewise a resident of Florida.  These ties and substantial contacts fairly subject Defendants to jurisdiction in this forum.

## II.   PROCEDURAL HISTORY

On June 15, 2006, Plaintiff GoForIt Entertainment LLC ("GoForIt") filed this action against Defendants asserting claims for trademark infringement, unfair competition and cybersquatting under the Lanham Act, 15 U.S.C. § 1051, *et. seq.* and related state law claims. Two of the Defendants – Reflex and Grant – are Florida citizens and have admitted that this Court has personal jurisdiction over them and all Defendants in this action.  Defendants Day, Digimedia, Cyberfusion and HappyDays have moved to dismiss this action on the ground that the Court lacks personal jurisdiction over them.

## III.   STATEMENT OF FACTS

A.      **Plaintiff GoForIt**

GoForIt is a Nevada limited liability corporation whose sole officer, director and employee, Russell Tewskbury, resides in Cocoa Beach, Florida.  Tewksbury Dec., ¶3.[1]  GoForIt owns a federal trademark registration for the service mark GOFORIT and operates the Internet directory website located at GoForIt.com.  *Id.*, ¶4-5.  All business that GoForIt transacts from within the state of Florida is interstate business.  *Id.*, ¶6.  All content for the GoForIt.com website originates from out of state, the services offered through that site are available nationally (indeed internationally), and the web server where all goforit.com content is hosted and made available to visitors is located out of state.  *Id.*, ¶7.

B.      **Defendants and Their Overlapping Ownership Structure**

**Scott Day:**      Defendant Day is an individual who, along with his partner, Florida resident Grant, has registered a large portfolio of "generic" domain names.  *Id.*, ¶8.  While some of these domain names are registered to Day himself, Day registered many of these domain names in the names of various entities he has formed, including three of the moving Defendants, Digimedia, Cyberfusion and HappyDays.  *Id.*  Through these entities, Day and Grant operate hundreds of websites in connection with the registered domain names.  *Id.*, ¶18. While Day and Grant organized the three Defendant companies into separate entities, the business model of all three entities is identical, many of the domain names registered to the defendants are hosted on the same web server and use identical name servers and all three are managed and controlled principally, if not exclusively, by Defendants Day and Grant themselves.  Complaint ¶¶5-6.  Moreover, despite filing an Affidavit herein, Defendant Day has not denied that he is the moving, active or conscious force behind either the accused infringing activities or the business

---

[1] Facts not controverted by Defendants' motion to dismiss are supported by citations to the Complaint, whereas facts purportedly controverted by Defendants' motion to dismiss are supported by citations to the Declaration of Russell Tewksbury ("Tewksbury Dec."), filed contemporaneously herewith.

operations of the Moving Corporate Defendants.

**Digimedia:**   Day and Florida resident Grant formed Digimedia in 1999 as a limited partnership.  Tewksbury Dec., Ex. B.  Digimedia is the registrant of hundreds of "generic" domain names.  *Id.*, ¶18.  Digimedia's principal place of business is 4245 Kemp Blvd., Suite 922, Wichita Falls, Texas, and its phone number is (940) 691-1800.  *Id.*, ¶3.  Digimedia's general partner is Digimedia.com Management, Inc. ("Digimedia Management") which has only two directors –Day and Florida resident Grant.  *Id.*, ¶12.  Defendant Digimedia also has three limited partners –Day, Florida resident Grant and Jay Chapman.[2]  *Id.*

**Cyberfusion:**   In 2005, Day and Florida resident Grant formed Cyberfusion as a limited partnership and transferred four of Digimedia's domain name registrations (org.com, com.org, org.net and gov.org) to Cyberfusion.  Reflex Ans. (Dkt # 26), ¶27.  Cyberfusion, who operates four portal websites in connection with these domain names, has as a principal place of business at the same location as Digimedia and a phone number that is the same number as Digimedia's. Tewksbury Dec., ¶13.  Cyberfusion also uses the same name servers that Digimedia uses, and its ownership structure is very similar to that of Digimedia.  *Id.*, ¶¶11, 13.  Like Digimedia, Cyberfusion has a single general partner, Digimedia Management, whose two directors are Defendants Day and Florida resident Grant.  Dkt # 26, ¶3; Tewksbury Dec., ¶12.  Cyberfusion also has two limited partners, Defendant HappyDays and Florida corporation Reflex, whose President is Florida resident Grant.  Day Aff., ¶35.

**HappyDays:**   HappyDays was incorporated in 1999 as an Oklahoma corporation.  *Id.*, Ex. D.  HappyDays, however, is currently "inactive" and has been suspended from doing

---

[2] Day has submitted an affidavit denying he is a limited partner in Digimedia, asserting instead that Digimedia's limited partners are HappyDays and Reflex.  A report generated from Dunn & Bradstreet, however, shows that as of October 17, 2005, Digimedia had three limited partners, Day, Florida resident Grant and Jay Chapman.  Tewksbury Dec., ¶12.  Under the directed verdict standard, this dispute should be resolved in GoForIt's favor. See *infra.* Even if Reflex is a limited partner, however, it is a Florida corporation, owned by Florida resident Grant.  Dkt # 26, ¶6.

business by the Oklahoma Tax Commission since 2003.  Tewksbury Dec., ¶14.

**C.     Defendants' Business Operations and Model**

Digimedia, Cyberfusion, and HappyDays are "virtual" companies who offer their

services solely via the Internet to consumers nationwide.  *Id.*, ¶15.  Unlike traditional "brick and

mortar" companies who provide goods or services out of a physical building, these entities

provide numerous Internet directory, index and/or guide services (i.e. "portals"), available *only*

via the Internet.  *Id.*, ¶16.  As stated on Digimedia's website (located at <digimedia.com>):

> Founded in 1997, DIGIMEDIA owns and operates a portfolio of powerful, common,
> generic domain names and corresponding web sites. Our domains and websites are
> ***located by Internet users*** via type-in navigation to their browser's address bar.  This form
> of direct-navigation has been found to contain some of the purest, most highly qualified
> ***web site traffic possible***.   DIGIMEDIA provides simple and inventive enhancements to
> help ***each visitor*** quickly find the information, product or service she needs.

*Id.*, Ex. D.  In other words, Digimedia's business model – like that of Defendants Cyberfusion

and HappyDays – is to operate a number of Internet "portals" that direct Internet users from

across the nation to the websites of others where they can locate the product, services or

information they seek.  As Digimedia explains:

> DIGIMEDIA is ***the Web's leading network*** of general interest websites.  Few companies
> can generate the organic internet traffic, targeted relevance, and visitor satisfaction that
> DIGIMEDIA does.  Our diverse ***network of websites connect millions of visitors*** with
> the products and services they need each week.

*Id.*  It is through this "portal" business model of connecting "millions of visitors" with the

"products and services" they seek that Defendants generate revenue.  *Id.*, ¶20.

Specifically, Defendants operate hundreds of websites in connection with domain names

such as  "bed.com," "chairs.com," "greatgifts.com," bicycles.com" (Digimedia), "prayers.com,"

"antiquefurniture.com" (HappyDays), and "org.com" and "com.org" (Cyberfusion), to name just

a few.  *Id.*, ¶18.  If a person wishes to shop on-line for bicycles, for instance, he can enter

4

"bicycles.com" and will arrive at one of Digimedia's websites, where he will be presented with hyperlinks to third party bicycle-related websites. *Id.*, ¶19. Visitors can do the same thing with HappyDays' "antiquefurniture.com," where they will be presented with hyperlinks to third party antique furniture websites. *Id.* Likewise, Cyberfusion's "org.com" is a portal where visitors are presented with hyperlinks, organized by category, to the websites of others. *Id.*

Each time a visitor arrives at a third party's website through one of Defendants' portal websites, Defendants get paid. *Id.*, ¶20. This activity ***is*** the entirety of Digimedia's, Cyberfusion's and HappyDay's business. Defendants generate revenue by encouraging Internet users from across the nation to visit their websites and "click through" to the websites of others. *Id.*, ¶¶20. As a USA Today newspaper article described Digimedia's business:

> When web surfers type in any of these addresses, they go to a website created by DigiMedia containing links that transport them to other sites. Every time a surfer clicks on one of these links, DigiMedia gets paid by the company paying to be listed on the site.

*Id.*, ¶21. The more users that visit their websites, the more revenue these entities have the potential to generate. *Id.*, ¶22.

While Digimedia and Cyberfusion have a physical (shared) office in Texas, this office is the ***only*** connection they have to Texas other than their Internet Server Provider happening to be located there.[3] The on-line services of these companies are in no way limited to, directed to or even targeted to just residents of Texas. *Id.*, ¶23. To the contrary, their services are aimed at consumers and business located ***in each and every state in the country, including Florida***, and their business model is specifically designed to generate revenue from web traffic generated ***from each and every state in the country, including Florida***. *Id.* Notably, each of Defendants' websites allows visitors to perform Florida-specific searches in the search window (e.g. one can search for "Miami car dealers"), where they will be presented with Florida-specific search

---

[3] Their President, Scott Day, resides in Oklahoma, as does HappyDays. Day Aff., ¶ 2; Tewksbury Dec., Ex. A.

results. *Id.*, ¶24.

In addition to Defendants' "generic" websites, Day (through Digimedia and HappyDays) operates several Florida-specific websites that purposefully target Florida residents, including Tampa-Bay.com, MiamiBeach.net, Atlanticbeach.com and Winterpark.com  (Digimedia) and Pompanobeach.com (HappyDays), where Florida residents can find and order products or services from Florida-based companies.[4] *Id.*, ¶30.  For instance, on Winterpark.com, consumers can link to and order Flowers from the website of a local Florida florist. *Id.*, ¶31.

Digimedia is also the registrant of the domain name "moviereviews.com," which it describes as "the first movie review website where all the content is controlled by the user community. *Id.*, ¶25.  The more votes and/or comments your submission has, the more likely it is to reach the home page of MovieReviews.com *for the whole world to see*." *Id.*, ¶26 (emphasis added).  In addition to allowing submission of and comment on movie reviews, the website also allows visitors to search for movie times and theaters in any zip code in the United States, including Florida. *Id.*, ¶32.

Digimedia's corporate website also inter-actively solicits business opportunities from third parties across the nation.  Under the heading "Advertise," the website states:  "If you have an interest in reaching thousands of customers a day or have a unique idea on how to partner with DIGIMEDIA, please let us know." *Id.*, Ex. D.  Visitors can then complete a form with their name, address, telephone number, email and comments, and submit it directly to Digimedia. *Id*.

### D.     The Infringing Conduct of the Defendants

---

[4]  Digimedia and HappyDays also own registrations for the Florida-specific domain names orlandochannel.com, Miamichannel.com Tampachannel.com, deerfieldbeach.com, fort-myers.com, lake-wales.com, panama-city.com, rivierabeach.com, altamontesprings.com, altamonte-springs.com, deerfieldbeach.com, florida-city.com, margate.com and Netflorida.com (Digimedia) and Watersoundbeach.com (HappyDays). Tewksbury Dec., ¶32. These domain names direct customers to Digimedia's "yeah.com" website, as does the domain name "activity.com." *Id.*, ¶33.  Activity.com is registered with Moniker Online Services, LLC, a Florida company based in Pompano Beach, Florida.  Moniker's standard agreement requires registrants to consent to personal jurisdiction in Florida. *Id.*, ¶¶33-36.

Because Defendants make money each time a visitor to one of their websites clicks through to the website of another, Defendants' are financially motivated to generate maximum website traffic.  To that end, Defendant Day has undertaken a number of activities designed to increase traffic to his websites, including the activities accused of infringement in this action. Specifically Day has used GoForIt's federally registered GOFORIT Mark as a subdomain with the domain names registered to himself or one of his companies. Complaint, ¶¶ 45-47.   If, for example, an Internet user typed the URL (website address) <goforit.com.org>, he would reach Digimedia's com.org website.[5]  *Id.*, ¶ 46.  In addition to webpage framing, GoForIt believes Defendants have engaged in other illicit technical manipulation designed to create user confusion and redirect traffic toward their websites, as further discovery will reveal.  *Id.*, ¶ 48.

## IV.    ARGUMENT AND CITATION OF AUTHORITY

### A.    The Standard for Establishing Personal Jurisdiction

When no evidentiary hearing is held on a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make "a prima facie case of personal jurisdiction over a nonresident defendant."  *Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 255 (11th Cir. 1996). "A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict."[6] *Id.*  Where a plaintiff pleads sufficient facts in its complaint to support personal jurisdiction over the defendant, the burden shifts to the defendant to submit evidence challenging the jurisdictional allegations.  *Response Reward Sys., L.C. v. Meijer, Inc.*, 189 F. Supp. 2d 1332, 1335 (M.D. Fla. 2002).  If the challenge is sufficient, the "burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents."  *Jet Charter Serv., Inc. v.*

---

[5] After the Complaint was filed, Defendants indicated that they have stopped using the GOFORIT mark.  In fact, some of their domain names, including "moviereviews.com" continue to use the mark.  Tewksbury Dec. ¶¶37-38.

[6] In the Eleventh Circuit, a directed verdict is proper only "[i]f the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict . . . ." *Lipphardt v. Durango Steak House of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001).

*Koeck*, 907 F.2d 1110, 1112 (11th Cir. 1990).

In determining whether personal jurisdiction is proper, "[t]he district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Robinson*, 74 F.3d at 255. Where there is conflicting evidence, the court should "give greater weight, in the context of a motion to dismiss, to the plaintiff's version" and must "construe all reasonable inferences in favor of the plaintiff." *Nissim Corp. v. ClearPlay, Inc.,* 351 F. Supp. 2d 1343, 1346 (S.D. Fla. 2004).

Determining whether personal jurisdiction exists over a nonresident defendant requires a two part analysis. *Robinson*, 74 F.3d at 256. First, the Court must consider whether the state long arm statute supports jurisdiction, and if so, the Court then determines whether the exercise of personal jurisdiction satisfies the Due Process Clause of the Fourteenth Amendment. *Id.*

The due process analysis has two-parts. First, the defendant must have "minimum contacts" with the forum state. *Cable/Home Commc'n Corp. v. Network Prods., Inc.,* 902 F.2d 829, 857 (11th Cir. 1990). Minimum contacts exist where a defendant "purposefully avails itself of the privilege of conducting activities within the forum State…." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Second, the exercise of personal jurisdiction must not offend "traditional notions of fair play and substantial justice." *Cable/Home*, 902 F.2d at 857.

A forum may exercise specific jurisdiction over a nonresident defendant if the defendant has "purposefully directed" his activities to forum residents, by "reach[ing] out beyond one state and creat[ing] continuing relationships and obligations with citizens of another state . . . ." *Id.*; 471 U.S. 462, 473 (1985).[7] With specific jurisdiction a "significant single act or meeting in the forum state" may be sufficient. *Cable/Home*, 902 F.2d at 858. Moreover, "physical presence by

---

[7] "Specific jurisdiction" exists where the cause of action "arise[s] out of or relate[s] to the defendant's contacts with the forum," whereas "general jurisdiction" requires continuous and systematic contact with the forum. *Cable/Home*, 902 F.2d at 858 FN41; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984).

the nonresident defendant is not necessary . . . ." *Id.*  Rather, the "operation of an Internet website

can constitute the purposeful availment of the privilege of acting in a forum state . . . 'if the

website is interactive to a degree that reveals specifically intended interaction with residents of

the state." *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002)

As shown herein, Plaintiff has established a *prima facie* case of personal jurisdiction over

Defendants.

**B.   GoForIt Has Pled Sufficient Facts in its Complaint to Support Personal Jurisdiction Over Defendants.**

Florida's Long Arm statute provides for specific personal jurisdiction over any defendant

"[c]ommitting a tortious act within this state." Fla. Stat. § 48.193(1)(b).  Physical presence in

Florida is not required to satisfy section 48.193(1)(b).  *Acquadro v. Bergeron*, 851 So. 2d 665,

670 (Fla. 2003).  Rather, when a plaintiff that resides in Florida owns a trademark, infringement

of that mark by a nonresident defendant satisfies section 48.193(1)(b). *JB Oxford Holdings, Inc.*

*v. Net Trade, Inc.,* 76 F. Supp. 2d 1363, 1366 (S.D. Fla. 1999); *Hartoy Inc. v. Thompson*, No. 02-

80454, 2003 WL 21468079, at *2 (S.D. Fla. Jan. 29, 2003); *Nida Corp v. Nida*, 118 F. Supp. 2d

1223, 1228 (M.O. Fla. 2000) ("Injury from trademark infringement occurs in the state where the

trademark owner resides"); *Stateline Power Corp. v. Kremer*, 404 F. Supp. 2d 1373, 1378 (S.D.

Fla. 2005) ("section (1)(b) of the Florida long-arm statute provides for jurisdiction over a person

who commits a tortious act that causes injury in the State of Florida, regardless of where that act

took place.")

The Complaint alleges that Defendants have committed trademark infringement of the

GOFORIT mark and that GoForIt, the mark's owner, resides in Florida.  GoForIt has therefore

satisfied its burden of pleading facts sufficient to satisfy long-arm jurisdiction.  Compliant, ¶ 1.

Defendants have not denied either fact.  The Court, therefore, must accept these uncontroverted

9

facts as true.  Consequently, GoForIt has established a *prima face* case of personal jurisdiction under section (1)(b) of Florida's long arm statute.

GoForIt has also pled facts sufficient to satisfy due process.  The Complaint goes into great detail about the business model through which Defendants generate revenue by attracting visitors from across the country, including Florida.  *Id.* at ¶¶ 26-48.  As explained section C below, it is these contacts with Florida that subject Defendants to personal jurisdiction in Florida consistent with due process.  The Complaint further alleges that Digimedia has registered domain names and operates websites specifically targeted to Florida such as tampa-bay.com and miamibeach.net, leaving no doubt that Defendants target Florida residents.[8]  *Id.* at ¶3.  The Complaint also alleges that Defendants' domain names and the websites operated in connection therewith are directly related to the tortious conduct in this case.  Paragraphs 45 through 48 specifically accuse Defendants of infringing the GOFORIT mark by incorporating that mark "as a subdomain in connection with the Accused Domain Names," in an intentional effort to misdirect traffic to their websites. *Id.* at ¶¶ 45-48.  The Accused Domain Names are identified by name in Exhibits A-C of the Complaint and notably include the Florida domain names registered to Digimedia and HappyDays.  Thus, Defendants' contention that their Florida contacts are not "in any way related to the alleged tortious conduct at issue in this case" is without merit.  Defs. Mot. at 11.

Defendants are also wrong that GoForit has failed to allege that Defendant Day "has taken any action whatsoever in his individual capacity."  *Id*.  Paragraph 5 specifically alleges Day "is the moving, active and conscious force behind" the "unlawful activities [of the corporate Defendants] complained of here."  Complaint, ¶5.  As discussed in section C(1)(d) below, an

---

[8] And while no Florida-specific domain names are registered to Cyberfusion, the Complaint alleges Cyberfusion is the alter-ego of Digimedia.  (Complaint, ¶3.)  To the extent the Court finds these names particularly significant to the analysis, GoForIt has alleged facts tying Cyberfusion to the Florida domain names.

individual who actively causes infringement is personally liable.  Moreover, the conduct that

creates personal jurisdiction in Florida (operating Internet portals) is directly attributed in the

Complaint to *all* Defendants, including Day.  Complaint, ¶44.  Lastly, the Complaint alleges

Defendants Grant and Reflex are Florida citizens who are limited partners of Digimedia and

Cyberfusion. *Id.* at ¶¶ 4,6.  As explained in section C(1)(c) below, the Florida citizenship of the

limited partners subjects Digimedia and Cyberfusion to personal jurisdiction in Florida

consistent with due process.

Because GoForIt has pled in the Complaint facts to support jurisdiction consistent with

due process,[9] Defendants have the burden of offering competent proof that personal jurisdiction

is lacking.  *Response Reward*, 189 F. Supp. 2d at 1335.  Defendants have not met their burden.

**C.    Viewing the Facts Most Favorably to GoForIt, Jurisdiction Over Defendants Satisfies Due Process.**

      **1.    Defendants have minimum contacts in Florida sufficient to satisfy specific jurisdiction.**

           a.    <u>Defendants' Internet portal websites establish minimum contacts</u>.

Defendants admit they generate revenue through the operation of websites that direct

visitors from across the nation to the websites of others.  Defs. Mot. at 1.  Defendants also do not

deny operating a number of websites that use Florida-based domain names and contain Florida

specific content.  Citing the "sliding scale" test developed in *Zippo Mfg. Co. v. Zippo Dot Com,

Inc.,* 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) however, Defendants argue their websites are

merely "passive" and thus insufficient to subject them to personal jurisdiction.  Defendants'

characterization of their websites as "passive" is misleading, and their reliance on the sliding

scale test to avoid personal jurisdiction is misplaced.

---

[9] To the extent the Court does not believe sufficient jurisdictional facts were alleged in the Compliant, GoForIt requests leave to amend under Fed. R. Civ. P. 15(a), which leave shall be freely given.

The sliding scale test was developed in 1997, when knowledge of the various ways the Internet can be used to generate revenue and conduct business was relatively limited.  The intent of the sliding scale test was to distinguish between truly local businesses who simply have an Internet presence from entities like Defendants who "clearly do business over the Internet." *Zippo,* 952 F. Supp. at 1124.  Recognizing that websites by their very nature are accessible from practically anywhere in the world, *Zippo* and its progeny appreciated the risk that businesses who advertised on the Internet could be subjected to personal jurisdiction anywhere in the nation.  *Id.*; *see also Weber v. Jolly Hotels*, 977 F. Supp. 327, 333 (D.N.J. 1997) ("a finding of jurisdiction . . . based on an Internet web site would mean that there would be nationwide (indeed, worldwide) personal jurisdiction over anyone and everyone who establishes an Internet web site.")  *Zippo* was rightfully concerned that businesses that sold products and services only into local markets could, simply by virtue of being on the Internet, be haled into court in jurisdictions where they never conducted business.  *Zippo,* 952 F. Supp. at 1123-24.  At the same time, *Zippo* recognized that businesses who used the Internet to "reach beyond its boundaries to conduct business with foreign residents" should be subject to regulation in other jurisdictions.  *Id.* at 1124.

To distinguish between the two, the *Zippo* court fashioned a sliding scale test pursuant to which websites are classified into categories:  at one end of the scale are passive websites that do "little more than make information available to those who are interested in it." *Id.*   These sites do not establish personal jurisdiction.  *Id.*  At the scale's other end are active websites, "where a defendant clearly does business over the Internet," such as selling goods.  *Id.*  In the middle are "interactive" websites, where users exchange information with the host computer.  *Id.*  With these websites, jurisdiction is proper depending on the "level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id.*

While the sliding scale test has been helpful in certain situations, courts since *Zippo* have recognized the test has limited applicability to Internet "portals" such as those operated by Defendants here. *See, e.g.*, *LFG, LLC v. Zapata Corp.*, 78 F. Supp. 2d 731, 736 (N.D. Ill. 1999) ("We cannot say that portals fit well within the existing internet/personal jurisdiction framework"). In *LFG*, the defendants, like Defendants here, operated an Internet "portal," offering a list of connections to other web sites by way of "hyperlinks." *Id.* at 733. As in this case, the portal at issue in *LFG* "connected users to the linked sites at no charge." *Id.* The *LFG* defendants moved to dismiss for lack of personal jurisdiction arguing, as do Defendants here, that their portal site was "passive" and they were otherwise not registered to do business, did not maintain an office, did not sell products or services, did not own or lease any property, and did not maintain a bank account in the forum state. *Id.* at 735.

In finding personal jurisdiction to be proper, the *LFG* court held that "[g]iven the nature and function of internet portals, it is not accurate to label them as 'passive.'" *Id.* at 736. Instead, it found that Internet portals are "somewhat analogous to a category two site – it is designed for user interaction." *Id.* at 737. Of particular significance to the court's finding was that the success of an Internet portal "hinges on the number of users interacting with it." *Id.*

Moreover, in denying the defendants' motion, the court noted that a page on the defendants' website allowed users to e-mail the defendants. *Id.* This was significant to the court because "Defendants created the mailing list for the purpose of developing contacts with internet users, seeking to provide further information about themselves," and even though it was unclear whether "defendants actually communicated with those who had requested to be on the mailing list, it is clear that they intended eventually to do so." *Id.* As such, and because the defendants did nothing "to prevent Illinois residents from being put on their mailing list," the court held the

"defendants made the choice to establish contacts with and 'enter' Illinois." *Id.*

As in *LFG*, Defendants here operate Internet portals that actively connect "millions of visitors" to the products and services they need, thereby generating revenue for Defendants. Under *LFG*, therefore, Defendants' websites are not properly characterized as "passive," but are more like the "interactive" websites on the *Zippo* sliding scale. Furthermore, like the defendants in *LFG*, Digimedia's corporate website has a page soliciting e-mail communications from businesses who "have an interest in reaching thousands of consumers every day or [who] have a unique idea on how to partner with DIGIMEDIA." Tewksbury Dec., Ex. D. Digimedia has done nothing to prevent Florida residents from seeking to do business with it and comes forward with no evidence that Florida residents do not visit its websites. As such, and given the nationwide scope of Defendants' business, it is clear Defendants have "made the choice to establish contacts with and "enter" Florida. *LFG*, 78 F. Supp. 2d at 737; *Bridgeport Music, Inc. v. Still N The Water Publ'g.,* 327 F.3d 472, 483-84 (6th Cir. 2003) (finding purposeful availment based on attempts to target markets in all fifty states); *Tobin v. Astra Pharm. Prods., Inc.,* 993 F.2d 528, 544 (6th Cir. 1993) (rejecting argument that defendant who sought product distribution in all fifty states did not "purposefully avail itself of the [forum] market . . ."); *United States SEC v. Carrillo,* 115 F.3d 1540, 1545 (11th Cir. 1997) (advertising "reasonably calculated to reach the forum may constitute purposeful availment"). Accordingly, and because Defendants' websites directly relate to GoForIt's claims, Defendants have sufficient minimum contacts to establish specific jurisdiction.

      b.   <u>Defendants' Florida-based search capability, content and domain names also establish minimum contacts with Florida.</u>

Not only do Defendants generate revenue from interacting with consumers nationwide, they also specifically target Florida by providing Florida-specific search functionality, content

and domain names.  In *Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*, 347 F. Supp. 2d

1242, 1246 (M.D. Fla. 2004), this Court found minimum contacts with Florida where a

defendant operated a revenue-generating website with content targeting Florida.  The Court

found purposeful availment because the website's search function "allow[ed] consumers to target

their search to a specific state or subject.  This allowed individuals to target Florida only." *Id.*

Here, Defendants' websites each allow searching of Florida-based content (e.g. Miami car

dealers) where hyperlinks to Florida-related websites are returned.  Tewksbury Dec., ¶24.  Like

in *Whitney*, every one of these Florida hyperlinks can generate revenue for Defendants.

Digimedia and HappyDays have also registered the Florida domain names Altamonte-

springs.com, Altamontesprings.com, Atlanticbeach.com, Deerfieldbeach.com, Florida-city.com,

Fort-myers.com, Lake-wales.com, Margate.com, MiamiBeach.net, Orlandochannel.com,

Panama-city.com, Rivierabeach.com, Tampa-Bay.com and Winterpark.com (Digimedia) and

Pompanobeach.com (HappyDays), further evidencing a demonstrated intent to target Florida

residents.[10]  Many of these names resolve to websites whose *entire* content relates to Florida.  *Id.,*

¶¶ 30-31.  Digimedia's moviereviews.com website further allows visitors to search for movies

and show times in Florida.  By targeting Florida through search functionality, content and

domain names, Defendants have purposefully directed their activities at Florida.

      c.    Digimedia and Cyberfusion's ownership structure also subjects them to
personal jurisdiction in Florida.

Defendants Grant and Reflex are both Florida citizens who are limited partners in

---

[10] Digimedia's use of Florida-specific names should also be attributed to Cyberfusion as Digimedia's alter-ego.  See
*Pepe (U.K.) Ltd. V. Grupo Pepe, Ltda.*, No. 91-1821-CIV-MOORE, 1992 U.S. Dist. LEXIS 17144, at *13 (S.D. Fla.
June 3, 1992) While Defendants argue that Digimedia has no authority to direct Cyberfusion's actions, this is not the
standard for alter-ego status.  *See SEB S.A. v. Sunbeam Corp.*, 148 F. App'x 774, 800 (11th Cir. 2005) (alter ego is
where one company is a "mere instrumentality" of another and improper conduct was used in making the former.)
CyberFusion has the same address and phone number as Digimedia, is the transferee of several of Digimedia's
domains, uses the host servers as Digimedia for its domains, and has a virtually identical ownership structure. Dkt #
26, ¶ 3; Tewksbury Dec., ¶¶ 11, 15.  These facts establish that Cyberfusion is Digimedia's alter-ego.

Digimedia and Cyberfusion, respectively.  Complaint, ¶¶ 4,6.  Limited partnerships are citizens

of the states in which their limited partners are citizens.  *Carden v. Arkoma Assocs.*, 494 U.S.

185, 195-196 (1990).  Because Grant and Reflex are Florida citizens, Digimedia and Cyberfusion

are likewise Florida citizens.  Citizens of a state are subject to personal jurisdiction in that state.

*Milliken v. Meyer*, 311 U.S. 457, 463-64 (1940).  By virtue of their Florida citizenship, therefore,

Digimedia and Cyberfusion are both subject to personal jurisdiction in Florida.  *See Liban v.*

*Churchey Group II, L.L.C.,* 305 F. Supp. 2d 136, 141 n. 2 (D.D.C. 2004).

Florida resident Grant is also one of only two Directors in Digimedia Management,

which is the sole general partner of Defendants Digimedia and Cyberfusion, and is also,

according to Defendants, the sole entity that manages Defendant Digimedia.  Day Aff., Ex. A.

Given their ties to Florida via Digimedia Management, there is no question the minimum

contacts standard is satisfied for both entities (which is presumably why Defendant Grant has

admitted personal jurisdiction over *all* Defendants)

d.   Defendant Day has minimum contacts with Florida.

GoForIt is not, as Defendants contend, relying on a "piercing the corporate veil"

argument to establish personal jurisdiction over Defendant Day.  To the contrary, black letter law

holds that "a corporate officer who directs, controls, ratifies, participates in, or is the moving

force behind the infringing activity, is personally liable for such infringement without regard to

piercing of the corporate veil."  *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th

Cir. 1994); *Orlovsky v. Solid Surf, Inc.,* 405 So. 2d 1363, 1364 (Fla. Dist. Ct. App. 1981)

(corporate officer is "individually liable for his tortious acts even though such acts were

committed in the scope of his employment by the corporation); *Chanel, Inc. v. Italian*

*Activewear of Fla., Inc.,* 931 F.2d 1472, 1477 (11th Cir. 1991) ("if an individual actively and

16

knowingly caused the infringement, he is personally liable"). Defendant Day does not deny he is the moving force behind the accused infringing activity, and thus this fact must be accepted as true for purposes of this motion. *Robinson*, 74 F.3d at 255.

While jurisdiction over an officer cannot be "predicated merely upon jurisdiction over the corporation," the "mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants." *Balance Dynamics Corp. v. Schmitt Indus, Inc.*, 204 F.3d 683, 697-98 (6th Cir. 2000). To the contrary, where, as here, an:

> out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; *i.e.*, whether she purposely availed herself of the forum and the reasonably foreseeable consequences of that availment.

*Id.* at 698. Here, jurisdiction over Defendant Day is proper for the same reasons jurisdiction over the corporate defendants is proper. A "corporation can act only through individuals." *Chanel*, 931 F.2d at 1477. Defendant Day has not disputed he has personally conducted or directed the activities of the corporate Defendants in operating their Internet portal websites, facilitating Florida-centric search capability and registering Florida-based domain names, and thus these facts must be accepted as true. Moreover, many of the domain names at issue here are registered specifically in Defendant Day's name personally, conclusively showing his active involvement in the accused infringing conduct. Tewksbury Dec. ¶8. Because he is the moving, active and conscious force behind the corporate defendants' Florida contacts, the minimum contacts discussed in section C(1)(a)-(b) are equally applicable to Defendant Day.

> e.   HappyDays also Has Minimum Contacts with Florida through its Relationship with Scott Day.

HappyDays is the registrant of several of the accused domains. HappyDays, however, is

an inactive corporation.  *See, e.g., Harris v. Black Clawson Co.*, 961 F.2d 547 (5th Cir. 1992) (state where corporation has been inactive for significant period cannot as matter of law be corporation's principle place of business.)  Thus, to the extent websites are operated in connection with HappyDays' domain names, it is Day (HappyDays' President and director) not HappyDays that is operating those websites.  Jurisdiction over HappyDays, therefore, is proper not only by virtue of its business model, but also to the extent there is jurisdiction over Day.

> **2.    The exercise of personal jurisdiction over Defendants in Florida is consistent with traditional notions of fair play and substantial justice.**

To determine whether jurisdiction is consistent with traditional notions of fair play and substantial justice, courts look at: "(a) the burden on the defendant, (b) the forum State's interest in adjudicating the dispute, (c) the plaintiff's interest in obtaining convenient and effective relief, (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (e) the shared interest of the several States in furthering fundamental substantive social policies." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1276 (11th Cir. 2002).  Where, as here, a defendant purposefully directs activities at forum residents, that defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477 (1985).

Even though GoForIt conducts only interstate business in Florida, Florida unquestionably has a legitimate interest in providing a forum to a Florida resident who "alleges its valuable trademarks have been infringed." *Enterprise Rent-A-Car Co. v. U-Haul Int'l, Inc.*, 327 F. Supp. 2d 1032, 1044 (E.D. Mo. 2004).  GoForIt also has an interest in the convenience of litigating where its sole employee resides. *Robinson*, 74 F.3d at 259.  Key witnesses in addition to Mr. Tewksbury, including Grant and other Reflex employees, are in Florida.  Any burden on Defendants is reduced greatly by modern methods of transportation and communication. *Id.*  And

18

Defendants have not alleged any "interests or social policies that will be hampered by finding jurisdiction in Florida." *Kim v. Keenan*, 71 F. Supp. 2d 1228, 1236 (M.D. Fla. 1999). Thus, personal jurisdiction over Defendants is consistent with fair play and substantial justice.

**D.      In the Alternative, GoForIt Requests Limited Jurisdictional Discovery.**

While the facts set forth above are more than sufficient to establish a *prima facie* case of personal jurisdiction over Defendants, in the event the Court disagrees, GoForIt requests leave to conduct limited jurisdictional discovery. *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729-31 (11th Cir. 1982) (jurisdictional discovery is mandatory); *Majd-Pour v. Georgiana Cmty. Hosp., Inc.,* 724 F.2d 901, 903 (11th Cir. 1984) (reversing district court for not allowing jurisdictional discovery); *Coca-Cola Foods v. Empresa Comercial Internacional De Frutas S.A.*, No. 96-358-CIV-T-17C, 1997 WL 370121, at *8 (M.D. Fla. June 12, 1997) (plaintiff entitled to jurisdictional discovery). Not permitting such discovery "would empower [Defendants] to defeat personal jurisdiction merely by filing a written affidavit contradicting jurisdictional facts alleged by a plaintiff," something that would be exceedingly unfair given that the "relevant evidence is most likely to be under defendants' control." *Nissim,* 351 F. Supp. 2d at 1350-51. Jurisdictional discovery would allow GoForIt to gather such evidence as (1) the revenue Defendants have generated from Florida citizens and Florida-specific websites; (2) Florida residents who have visited Defendants' sites; (3) Florida resident Grant's participation in the operation of Defendants' websites; (4) communications between Day and Florida resident Grant relating to their business and partnership; and (5) the alter-ego status of Defendants.

**E.      GoForIt Need Not Register to do Business in Florida to Maintain this Action**

Finally, Defendants argue GoForIt is barred from bringing this action under Florida's forum-closing statute because it failed to register as a foreign corporation "transacting business"

19

in Florida.  Defs. Mot. at 5, n. 1.  This assertion is misguided for two reasons.  First, Florida's

forum-closing statute does not apply to federal courts adjudicating federal claims arising under

federal law.  *Norman M. Morris Corp. v. Weinstein*, 466 F.2d 137, 142-43 (5th Cir. 1972)

(statute "does not limit the jurisdiction of the federal district court's in Florida" and is not

applicable where "trial court had jurisdiction under the provisions of 15 U.S.C.S. s 1125(a) . . .

"); *Kinetic Concepts, Inc. v. Kinetic Concepts, Inc.*, 601 F. Supp. 496, 498 (N.D. Ga. 1985) ("if

subject matter jurisdiction is not based upon diversity of citizenship, the federal court need not

apply forum state restrictions on a corporation's ability to sue") (citation omitted).  Because

subject matter jurisdiction arises under the Lanham Act, the forum closing statute does not apply.

Second, it is well-established that "Florida cannot require foreign corporations to register

before bringing an action if the corporation's activities in Florida are purely interstate and the

suit is based on those interstate activities."  *Lawson Prods., Inc. v. Tifco Indus., Inc.*, 660 F.

Supp. 892, 895 (M.D. Fla. 1987).  Here, GoForIt's only activities in Florida are the oversight of

GoForIt.com, a website whose activities are purely interstate in nature.  Even GoForIt's state law

claims are acquired under the laws of interstate commerce, as they are based on the same

operative facts that give rise to its Lanham Act claims.  As such, GoForIt is exempted from the

registration requirement of the Florida statutes.[11]

## V.   CONCLUSION

For the foregoing reasons, GoForIt respectfully requests that the Court deny Defendants'

motion to dismiss for lack of personal jurisdiction.  In the alternative, GoForIt requests the Court

grant it leave to conduct 90 days worth of jurisdictional discovery and deny Defendants' motion

to dismiss without prejudice to re-filing it after the close of the 90 days.

---

[11] If the Court nevertheless finds registration is necessary to maintain this action, it need not dismiss the case, as GoForIt will simply register to do business in Florida. See Fla. Stat. § 607.1502.

Respectfully submitted, this 18th day of December, 2006.

/s        **Robin L. McGrath**
Robin L. McGrath, Esq.  (*Pro Hac Vice*)
Email: robin.mcgrath@alston.com
Ryan W. Koppelman, Fla. Bar No. 909041
Email: ryan.koppelman@alston.com
ALSTON & BIRD, LLP
1201 W. Peachtree Street
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7000
Fax: (404) 881-7777

Richard E. Mitchell, Fla. Bar. No. 0168092
Email: rmitchell@gray-robinson.com
GRAY ROBINSON, P.A.
301 E. Pine Street, Suite 1400
Post Office Box 3068
Orlando, Florida 32802-3068
(407) 843-8880 Telephone
(407) 244-5690 Facsimile

ATTORNEYS FOR PLAINTIFF,
GOFORIT ENTERTAINMENT LLC

21

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GOFORIT ENTERTAINMENT LLC,               )
                                         )
        Plaintiff,                       )
                                         )        CIVIL ACTION NO.
v.                                       )        6:06-cv-00816-JA-KRS
                                         )
DIGIMEDIA.COM L.P.,                      )
CYBERFUSION.COM L.P., HAPPYDAYS, INC., )
REFLEX PUBLISHING, INC., ERIC GRANT,     )
SCOTT DAY,                               )
                                         )
        Defendants.                      )
_____)

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of December 2006, I have served a copy of the

foregoing **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO 12(b)(2) MOTION TO

DISMISS BY DEFENDANTS DIGIMEDIA.COM L.P., CYBERFUSION L.P.,

HAPPYDAYS, INC. AND SCOTT DAY**, on the following: Gregory W. Herbert

herbertg@gtlaw.com; Philip Free Jr., Esq. phil.free@crowedunlevy.com; Michael Gay, Esq.

mgay@foley.com; Jeremy Michael Thompson jmthompson@foley.com

/s      **Robin L. McGrath**